No. 25-2118

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

JERID HINZ,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 3:21-CR-00115
The Honorable Judge James D. Peterson

REPLY BRIEF OF
DEFENDANT-APPELLANT, JERID HINZ

FEDERAL PUBLIC DEFENDER
CENTRAL DISTRICT OF ILLINOIS
1701 4th Avenue, Suite 130
Rock Island, Illinois 61201
Telephone:   (309) 948-7190
Fax:              (309) 788-0856
Email:  Michael_Roy@fd.org

THOMAS W. PATTON
Federal Public Defender

MICHAEL WILL ROY
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
JERID HINZ

**ORAL ARGUMENT REQUESTED**

# Table of Contents

        **Page**

Table of Authorities ................................................................................................. iii

Issues Presented for Review .................................................................................... 1

Argument ................................................................................................................ 2

    I.    The court erred by sentencing Hinz based on unproven conduct that the government explicitly chose not to pursue. ........................................ 2

    II.    The court lacked authority to order Hinz registered with state authorities upon his release. ................................................................... 7

        A.    The standard of review is *de novo*. ............................................... 7

        B.    The government does not identify any authority for the registration requirement. ........................................................... 10

Conclusion ............................................................................................................ 14

# Table of Authorities

Page

## Cases

*Esteras v. United States*, 606 U.S. 185 (2025) ............................................................... 4

*Gall v. United States*, 552 U.S. 38 (2007) ..............................................................13

*Gunn v. Minton*, 568 U.S. 251 (2013) ....................................................................11

*In re United States*, 503 F.3d 638 (7th Cir. 2007) ................................................... 2

*U.S. ex rel. Welch v. Lane*, 738 F.2d 863 (7th Cir. 1984) ....................................... 2

*United States v. Bickart*, 825 F.3d 832 (7th Cir. 2016) ......................................8, 12

*United States v. Bridgewater*, 950 F.3d 928 (7th Cir. 2020) ................................... 4

*United States v. Cunningham*, 554 F.3d 703 (7th Cir. 2009) .................................11

*United States v. England*, 555 F.3d 616 (7th Cir. 2009) .................................... 2, 3

*United States v. Fennell*, 925 F.3d 358 (7th Cir. 2019) ........................................... 7

*United States v. Ferguson*, 752 F.3d 613 (4th Cir. 2014) ........................................ 7

*United States v. Franklin*, 547 F.3d 726 (7th Cir. 2008) ........................................11

*United States v. Gutierrez-Ceja*, 711 F.3d 780 (7th Cir. 2013) ........................10, 12

*United States v. Jimenez*, 275 F. App'x 433 (5th Cir. 2008) ................................... 9

*United States v. Jordan*, 765 F.3d 785 (7th Cir. 2014) ............................................ 6

*United States v. Kieffer*, 794 F.3d 850 (7th Cir. 2015) ...........................................11

*United States v. Martin*, 109 F.4th 985 (7th Cir. 2024) ........................................... 9

*United States v. Martin*, 122 F.4th 286 (7th Cir. 2024) ........................................... 9

*United States v. Miller*, 900 F.3d 509 (7th Cir. 2018) ............................................. 2

*United States v. Newton*, 76 F.4th 662 (7th Cir. 2023) ............................................ 2

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ....................................... 2

*United States v. Solomon*, 892 F.3d 273 (7th Cir. 2018) ......................................... 4

*United States v. Wilcher*, 91 F.4th 864 (7th Cir. 2024) ..................................7, 9, 12

*United States v. Wood*, 31 F.4th 593 (7th Cir. 2022) ......................................7, 8, 9

*United States v. Zamudio*, 718 F.3d 989 (7th Cir. 2013) .............................................. 9, 10, 12

**Statutes**

18 U.S.C. § 3553 ................................................................................................ 4, 11

18 U.S.C. § 3583 ........................................................................................... 4, 10, 11

**Other Authorities**

Fed. R. Crim. P. 51 .................................................................................................. 8

# Issues Presented for Review

I. Did the district court err when it found that Jerid Hinz violated his supervised release by possessing a firearm when (1) the government affirmatively chose not to pursue that alleged violation; and (2) no evidence in the record supports a finding that Hinz committed the violation?

II. The district court sentenced Jerid Hinz to 24 months' imprisonment with no supervised release to follow. Did the court err when it ordered Hinz "to be registered with local law enforcement agencies and the state attorney general before his release from confinement," when (1) Hinz is not serving any form of community supervision post-release, as would allow the court to impose conditions of release; (2) no state law requires his registration; and (3) the court did not cite any other authority to impose this release condition?

**Argument**

**I.     The court erred by sentencing Hinz based on unproven conduct that the government explicitly chose not to pursue.**

A criminal defendant's right to be sentenced based on accurate information means that a district court may not rely on "speculation or unfounded allegations" to make sentencing decisions. *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009). *See also United States v. Newton*, 76 F.4th 662, 674 (7th Cir. 2023). Relatedly, a sentencing court may consider only the charges and allegations that the government chooses to pursue. *United States v. Sineneng-Smith,* 140 S. Ct. 1575, 1579 (2020); *In re United States*, 503 F.3d 638, 642 (7th Cir. 2007). The district court here violated these principles. Although the probation officer alleged that Jerid Hinz possessed and fired a gun while on supervision, the government affirmatively chose not to pursue that allegation. And, after waiving the issue, the government presented no evidence to support an assertion that Hinz possessed a gun. Yet the court nonetheless found that Hinz violated his supervision by possessing a firearm. (App. at 18.) This error requires resentencing. (Hinz's Br. at 12–16.)

The government seems to mistakenly believe that, although the district court explicitly found that Hinz possessed a gun, the finding can be "harmless error" if it had little effect on the final sentence. (Gov't Br. at 9, 12.) A harmless-error argument is a nonstarter because the harmless-error doctrine does not apply in this context. *See United States v. Miller*, 900 F.3d 509, 514 (7th Cir. 2018) (citing *U.S. ex rel. Welch v. Lane*, 738 F.2d 863, 868 (7th Cir. 1984)). (Hinz's Br. at 13.) This Court's analysis ends upon any conclusion that the district court relied at all on speculation at sentencing; that conclusion

results in automatic remand for a new sentencing hearing. *See England*, 555 F.3d at 622.

And here, the government cannot show that the district court did not rely on its erroneous finding that Hinz possessed a firearm. The government misconstrues the written order when it argues that the court only "briefly noted" Hinz's possession of a firearm, "immediately followed by a sentence indicating the district court would *not* consider that allegation." (Gov't Br. at 11–12.) In reality, the government is citing two different paragraphs discussing different topics. First, the court found that Hinz violated several conditions, including "Standard Condition No. 12 stating he shall not possess a firearm, ammunition, or a dangerous weapon." (App. at 18.) Second, the court started a new paragraph with the throat-clearing phrase "Defendant *also* faces new charges." (App. at 18) (emphasis added.) That is, the court believed that Hinz "also" faced charges in addition to the findings listed in the previous paragraph.

While the district court undoubtedly understood that Hinz disputed these "new charges," and while the court said it would not consider the "new charges," the court's language suggests that it still found that Hinz *also* possessed a gun separate from the disputed charges. Perhaps the court's finding about gun possession stemmed from the government's statements during the hearing about firearm trafficking, which were unrelated to the incident surrounding Hinz's arrest. (App. at 7.) Or, perhaps, the court thought Hinz faced revocation for violating the no-guns condition even if the government did not seek to rely on the gun to prove a new-crime violation. Ultimately, the district court's reasoning is jumbled, in part because the court seems to have been confused about

3

whether Hinz faced additional charges at all. (Hinz's Br. at 14–15.)

The district court further relied on its finding that Hinz possessed a gun when it explained that a maximum sentence was necessary because Hinz presented a violent danger to the community. (App. at 12; Hinz's Br. at 16.) The government claims that the court was referring to older conduct, especially prior convictions from 2016 and 2017, that occurred years before Hinz's federal case. (Gov't Br. at 3–4, 13; PSR ¶¶ 52–53.) But the government's position falters because revocation of supervised release was not the time to punish Hinz for prior conduct (and certainly not decade-old convictions). *Cf. Esteras v. United States*, 606 U.S. 185, 200 (2025) ("the court could not revoke based on the view that, given the violent nature of the underlying offense, the defendant deserves additional punishment.") The district court was required to consider whether the public *currently* requires protection from Hinz. *See* 18 U.S.C. §§ 3553(a)(2)(C) & 3583(e). "[S]entencing is never abstract: the district court is required by § 3553 to tailor its sentence to the particular defendant before it." *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020) (quoting *United States v. Solomon*, 892 F.3d 273, 279 (7th Cir. 2018)).

The relevant question was whether Hinz, as he stood before the district court in 2025, presented a danger that required incapacitation. Indeed, the district court itself framed the question in the same way; it clarified that it was "not concerned" with conduct that occurred before the previous revocation. (App. at 4.) Yet the court still found that Hinz posed a risk of violence. The violations pursued by the government were

4

not violent (and neither were the underlying conviction or violations that led to the previous revocation). So what about Hinz's current violation, apart from unproved allegations that he used a gun (or possessed several as part of an alleged trafficking scheme), would suggest a danger of ongoing violent behavior?

Although the government did not present any evidence that Hinz had been violent while on supervision, it did ask the court to *speculate* that Hinz needed to be incapacitated because of some danger related to vague, future charges for "firearm trafficking." (App. at 7.) But those firearm-trafficking charges never materialized and, more importantly, the government presented no evidence to substantiate any allegation of trafficking. So, maybe the court accepted the government's request to adopt this unsubstantiated allegation. Or, maybe or it thought Hinz dangerous because of the unproven allegations that he possessed and used a firearm. Neither possibility is a good justification for the sentence.

Finally, one point worth emphasizing is that the revocation proceedings as a whole were rife with confusion. (Hinz's Br. at 6, 14–16.) The hearing started with an extended back-and-forth seeking to clarify what, exactly, Hinz was willing to stipulate. (App. at 2–5.) Even on appeal, the government seems confused about the stipulated conduct, incorrectly saying that Hinz "stipulated to violating the condition that he not commit another crime based on his convictions for resisting an officer and possession of narcotics." (Gov't Br. at 6.) Those were the offenses Hinz committed before his *first* revocation in 2024, and with which the court was "not concerned." (Hinz's Br. at 6; App. at 3–4.) The stipulations underlying the current revocation were for bail jumping

5

and possession of methamphetamine. (App. at 5.)

After the initial confusion, the government further muddied the waters by arguing that the court should consider alleged firearm trafficking as a reason why Hinz needed incapacitation. (App. at 7.) Firearm trafficking was not one of the violations under review, nor did the government present evidence of trafficking. And the government's request did not even make sense given its agreement to proceed only on stipulated conduct. (App. at 6.) Following this confusing argument, the court found that a maximum term of imprisonment was necessary to protect the public because Hinz "puts the community at risk" with his "violent" behavior. (App. at 12.) But the court did not identify any ongoing violence or danger to the community, apart from the unproven "new charges" related to a shooting that the government chose not to pursue. (App. at 18.) (And even then, the court was confused because Hinz no longer faced any charges, much less charges for crimes of violence. (Hinz's Br. at 14.)) The court coupled this explanation with a finding that Hinz violated the no-firearm provision, even though that allegation had been dropped by the government. (App. at 18.)

After all this, the district court tacked on a mysterious registration requirement without explaining the legal basis for it. (Hinz's Br. at 17–19.) Although the registration requirement does not directly relate to Hinz's prison sentence, it is a symptom of more general problems with the judgment. Revocation proceedings are an important part of our legal system, and "the stakes may be months or even years in prison." *United States v. Jordan*, 765 F.3d 785, 788 (7th Cir. 2014). Yet "supervised release revocation hearings

are surely way down on the list of things that keep busy district judges and equally busy Assistant United States Attorneys up at night." *United States v. Ferguson*, 752 F.3d 613, 620 (4th Cir. 2014). This case is a good example: Although Hinz received two years' imprisonment, the government did not submit any written filing, and the transcript of the revocation hearing is only 15 pages. (App. at 1–15.) In this context, it is no wonder that attorneys and judges can allow errors to slip in. The registration requirement is the most glaring example, but it is only one more head-scratcher in an already confusing record.

In short, the record is a mess. To determine what the district court relied on when sentencing Hinz, this Court should look at what the district court said were its findings. The court found that Hinz violated conditions related to possession of a firearm. (App. at 18.) The government did not pursue that violation, nor did it provide any evidence to support that finding, so the judgment is fundamentally flawed. Hinz should be resentenced.

## II. The court lacked authority to order Hinz registered with state authorities upon his release.

### A. The standard of review is *de novo*.

This Court reviews *de novo* the scope of the district court's authority at sentencing. *United States v. Fennell*, 925 F.3d 358, 361 (7th Cir. 2019). And because the district court's error was "'created by' the ruling itself," Hinz did not need to lodge an after-the-fact exception to preserve the issue. *United States v. Wilcher*, 91 F.4th 864, 870 (7th Cir. 2024) (quoting *United States v. Wood*, 31 F.4th 593 (7th Cir. 2022)).

Although the government insists that plain-error review applies, it fails to develop

any meaningful argument that Hinz forfeited this issue. (Gov't Br. at 14.) On the contrary, the government recognizes this Court's holding in *Wood* that defendants have no obligation to take exception to a sentencing ruling that has already been made. (Gov't Br. at 14.) Yet the government argues that *Wood* should not apply because *Wood* did not involve "a district court's post-sentencing order imposing an obligation on an actor other than the defendant." (Gov't Br. at 14.)

The government's attempt to differentiate *Wood* raises more questions than it answers. The government does not explain why a post-sentencing error, made outside the presence of the defendant, would create an obligation to object when an error during the hearing would not. And the government ignores the Federal Rules of Criminal Procedure, which "state[] in no uncertain terms: '[e]xceptions to rulings or orders of the court are unnecessary.'" *Wood*, 31 F.4th at 597 (quoting FED. R. CRIM. P. 51(a)). The government also fails to explain why it should matter that the ruling imposes an "obligation on an actor other than the defendant." (Gov't Br. at 14.) Conditions of release can place a burden on the defendant even if they are directed toward another actor. *See, e.g., United States v. Bickart*, 825 F.3d 832, 841 (7th Cir. 2016) (vacating condition that directed probation officer to notify third parties about defendant's risk to community). Minutiae in the logistics of a condition do not change what a defendant must do to preserve his objection.

The rule here is simple: Rule 51(a) does not require defendants to make post-hoc objections to sentencing errors made by the court itself. "By now our precedent is crystal

clear on the point." *United States v. Martin*, 122 F.4th 286, 289 (7th Cir. 2024). Indeed, this Court has previously warned the government to stop disregarding circuit law on the issue. *See id.* at 288 ("We are running low on patience with the lack of adherence to our precedent in this area). Unfortunately, the government has again failed to heed this Court's guidance in cases like *Martin*, 122 F.4th 286, *Wood*, 31 F.4th 593, *Wilcher*, 91 F.4th 864, and *United States v. Martin*, 109 F.4th 985 (7th Cir. 2024). But the government's obstinate position does not change the "crystal clear" law of the circuit. *Martin*, 122 F.4th at 289.

    For the sake of completeness, the defense briefly notes that Hinz would still prevail even under plain-error review. The error is plain because this Court has already held that judges lack authority to impose conditions on a defendant's release unless the judge also orders a term of supervision. *United States v. Zamudio*, 718 F.3d 989, 990 (7th Cir. 2013). (Hinz's Br. at 17.) And the error affects Hinz's substantial rights, as well as the fairness, integrity, and public reputation of the proceedings, because the district court ordered Hinz subject to unlawful registration after his sentence is complete. *See, e.g., United States v. Jimenez,* 275 F. App'x 433, 442 (5th Cir. 2008) ("Courts are in agreement that imposing a sex offender registration requirement and treatment affects a substantial right") (collecting cases). Because the government cites no reason to depart from *Wilcher* or other precedent, however, the defense will focus on a *de novo* framework.

## B. The government does not identify any authority for the registration requirement.

A district court cannot impose conditions upon a defendant's release from prison unless the court also orders a term of supervision. *United States v. Zamudio*, 718 F.3d 989, 990 (7th Cir. 2013); *United States v. Gutierrez-Ceja*, 711 F.3d 780, 782 (7th Cir. 2013). Here, the district court ordered that, before Hinz can be released, he must first "be registered with local law enforcement agencies and the state attorney general." (App. at 21.) Because the court did not also impose supervision, it lacked authority to impose a separate registration requirement as a condition upon Hinz's release.

The government confusingly insists that "Hinz does not allege the district court lacked authority for this order." (Gov't Br. at 9.) This is simply wrong. Hinz's opening brief explains at length why the district court lacked authority to impose this condition, in a section appropriately titled: "The court lacked authority to order Hinz registered with state authorities upon his release." (Hinz's Br. at 17–19.) As the opening brief explains, 18 U.S.C. § 3583(d) is the only authority that allows courts to impose conditions on release, and that statute does not apply here. The government has not meaningfully responded to this argument.

Instead, the government seemingly concedes that no authority empowered the court to impose this restriction, but it complains that Hinz "does not cite any authority that *precludes* a district court from" imposing registration. (Gov't Br. at 15) (emphasis added.) Again, this is wrong; this Court's prior decision in *Zamudio* foreclosed the court

from imposing any condition on how Hinz is released. (Hinz's Br. at 17.) But in any case, the government's argument misunderstands the authority of federal judges. "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted). As in other areas of jurisprudence, federal judges' powers are limited when it comes to matters of sentencing. *See, e.g., United States v. Kieffer*, 794 F.3d 850, 853 (7th Cir. 2015) ("judges may order restitution only if there is a statutory basis to do so"); *United States v. Franklin*, 547 F.3d 726, 735 (7th Cir. 2008) (judges lack authority to depart from sentencing range set by Congress). "[T]here is no 'inherent authority' for a district court to modify a sentence as it pleases." *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009). Rather than ask Hinz to cite authority precluding the district court's power to impose a registration requirement, the government should identify authority granting that power. It has not.

Here, the district court's power to modify Hinz's sentence came from 18 U.S.C. § 3583(e), which allows courts to modify or revoke supervised release. When imposing a new sentence of prison or supervision upon revocation, the court was then limited to the authority granted it by Congress in 18 U.S.C. §§ 3553 & 3583. Section 3583(d) is the only provision that allows conditions on release, and it applies only when the court orders supervision. If the government believes the district court had some other grant of authority to impose the registration condition, be it "inherent power" or something else, it has developed any argument along those lines.

The arguments the government does make are unconvincing. It claims that *Gutierrez-Ceja* and *Zamudio* do not apply because they vacated post-release conditions, unlike the pre-release condition in this case. (Gov't Br. at 15–16.) But this case is not meaningfully different from *Zamudio*, which similarly placed a prerequisite on the defendant's release. Zamudio's release was conditioned upon the prison turning him over to immigration authorities at the end of the sentence. *Zamudio*, 718 F.3d at 990. Likewise, Hinz's release is conditioned upon him first being registered with state and local officials. (App. at 21.) Although the details are different, both cases involve conditions upon release without a respective order of supervision.

Also unconvincing is the government's argument that the error is harmless merely because it directs a government official to register Hinz rather than directing Hinz to register himself. (Gov't Br. at 16–17.) *Zamudio* also involved a condition directing a government agent—not the defendant—to take a specific action. 718 F.3d at 990 ("defendant is to be turned over to the proper immigration authorities"). And in any case, as mentioned above, conditions of release can prejudice a defendant even when they are carried out by another party. *See, e.g., Bickart*, 825 F.3d at 841 (vacating condition that directed probation officer to notify third parties). Hinz's case is not unique in this regard.

Finally, the government wrongly suggests that the district court had no obligation to explain why it imposed the registration requirement. (Gov't Br. at 16.) Due process always requires courts to "adequately explain" their sentences, so as to allow "meaningful appellate review." *Wilcher*, 91 F.4th at 871 (quoting *Gall v. United States*,

12

552 U.S. 38, 50 (2007)). The duty of courts to explain their sentences applies to conditions of release just as it does to prison sentences. *Id.* And this case demonstrates why the rule is well-established: With no explanation from the district court, the rationale and purported authority for the registration requirement remain a mystery. `

No other court seems to impose this registration requirement. (Hinz's Br. at 19.) This Court should put an end to the practice in the Western District of Wisconsin.

**Conclusion**

This Court should vacate the revocation judgment and remand for further proceedings.

Respectfully submitted,
THOMAS W. PATTON
Federal Public Defender

s/ Michael Will Roy
MICHAEL WILL ROY
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
JERID HINZ

**Certificate of Compliance with FED. R. APP. P. 32(a)(7)(B)**

The undersigned certifies that this brief complies with the volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32 in that it contains 3,286 words as shown by Microsoft Word for Microsoft 365 used in preparing this brief.

s/ Michael Will Roy
MICHAEL WILL ROY
Assistant Federal Public Defender

Dated: January 20, 2026